# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUDY M. ELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-418-SPS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Judy M. Ellis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born May 31, 1973, and was thirty-eight years old at the time of the administrative hearing (Tr. 35, 126). She completed her GED and has no past relevant work (Tr. 24, 145). The claimant alleges inability to work since June 16, 2010, due to fibromyalgia, arthritis, and migraine headaches (Tr. 36, 144).

### Procedural History

On June 16, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 2, 2011 (Tr. 14-26). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), limited to simple, unskilled tasks not requiring interaction with the general public. The ALJ added that if the claimant could perform light work, she could also perform sedentary work (Tr. 18). The ALJ concluded that even though the claimant could not return to her past relevant work, she was nevertheless not

disabled because there was other work she could perform in the regional and national economy, *i. e.*, products assembler, laundry worker, and nut and bolt assembler (Tr. 25).

**Review**

The claimant contends that the ALJ erred (i) by failing to include in her RFC any limitations corresponding to her mental impairment, as found by one of the state agency physicians; and (ii) by failing to properly evaluate her credibility. In support of the latter contention, the claimant argues the ALJ disregarded opinion evidence from her treating physician, Dr. Michael Malloy, and failed to account for her pain-producing impairments. The Court finds these arguments persuasive, and therefore concludes that the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's fibromyalgia and anxiety disorder were severe impairments (Tr. 17). The relevant medical evidence reveals that Dr. Malloy saw the claimant in June, 2010 for complaints of fatigue, fever, night sweats, headache, insomnia, paresthesia, back pain, bone/joint symptoms, muscle weakness, myalgia, neck stiffness, and rheumatologic manifestations in June, 2010. He diagnosed her with fibromyalgia, fatigue, osteoarthritis multiple, low back pain, and osteopenia (Tr. 204). The claimant had reported such symptoms as early as 2007, and continued to report low back pain, hip pain, osteopenia, and fibromyalgia (Tr. 211, 213, 214, 216-217, 229, 333, 335-338, 376-379). At an August 5, 2010 consultative examination, Dr. Jimmie Taylor noted that she had mildly decreased grip strength and that all fibromyalgia trigger points were tender to palpation. He diagnosed her with migraine headaches and fibromyalgia by history, as well as anxiety depression, chronic pain, and mild decrease in grip (Tr. 286-292). At a

mental status examination, Patricia Walz, Ph.D. suspected the claimant underreported the amount of pain medication she was taking, and diagnosed her with adjustment disorder with anxiety and depression, panic disorder with agoraphobia that was well-managed with medication, as well as a history of methamphetamine abuse and dependent traits, and assessed the claimant with a Global Assessment of Functioning range from 45-55 (Tr. 297). She noted that the claimant's attention and concentration were impaired, but that she persisted well. Dr. Walz also noted that the claimant had basic math skills but reported needing help to manage funds (Tr. 298).

On July 11, 2011, Dr. Malloy noted that the claimant's fibromyalgia had a gradual onset and was moderate to severe, and that the discomfort was persistent but the problem was fluctuating due to factors such as cold or rainy weather (Tr. 381). His review of systems indicated that the claimant was positive for back pain, bone/joint symptoms, muscle weakness, myalgia, neck stiffness, and rheumatologic manifestations (Tr. 382). He also noted that the claimant had tenderness in the lumbar spine, and both hips, and was 18/18 of tender points (Tr. 383). That same day, Dr. Malloy completed a "Treating Physician Opinion of Patient Limitations." He indicated that the claimant was not a malingerer, and that pain affected the claimant's life to a severe degree, would be increased by physical activity, and would interfere with the patient's ability to perform work. He attributed this to both physical limitations and fatigue, and opined that she would not be able to complete a 40-hour work week and would likely be absent from work due to the impairments or treatment three days a month (Tr. 374). In support, he stated that she was unable to sit or stand more than twenty minutes at a time, and walk no

more than ten minutes at a time, and that she "has frequent flare ups that cause fatigue and muscle pain. Due to this condition she cannot work a full-time job." (Tr. 374).

At the administrative hearing, the claimant testified she did not believe she could work even with very light lifting requirements and a sit/stand option, due to pain from fibromyalgia in her hands, lower back, and hips, as well as medications that made her drowsy, and frequent migraine headaches (Tr. 38). She testified that she saw to her own personal needs and did some housework, including easy frozen meals, but had her son helping with vacuuming (Tr. 40). The claimant also testified that she used to ride horses and study karate, but had not done so in two years due to her health (Tr. 41). She stated that she had trouble with math, getting "numbers mixed up," but could sometimes figure the amount of change she was supposed to get back (Tr. 42). She stated that on bad days (which occurred as often as once a week), her pain was a seven or eight out of ten and she did not leave her home or do housekeeping chores on those days (Tr. 43). She testified that she could sit and stand about thirty minutes at a time but could not repetitively lift even a gallon of milk without pain (Tr. 47). Additionally, the claimant said that cold weather caused stiffness in her joints and exacerbated her pain (Tr. 49).

In his written opinion, the ALJ summarized the claimant's testimony as well as her medical evidence. He noted her treatment for migraine, joint pain and stiffness, and her reports at the consultative examination that all her fibromyalgia trigger points were tender to palpation (Tr. 20-22). He also noted the consultative examiner's suspicion that the claimant underreported the pain medication she was taking, and determined that findings by Dr. Malloy and the consultative examiner were "basically normal" (Tr. 22-24).

-6-

In support of her contention that the ALJ improperly evaluated her credibility, the claimant first argues that the ALJ improperly disregarded Dr. Malloy's findings. Medical opinions from a treating physician such as Dr. Malloy are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the opinion of a treating physician's opinion are not entitled to controlling weight, the ALJ must determine the appropriate weight to give them by considering the following factors: (i) length of treatment and frequency of examinations; (ii) nature and extent of the treatment relationship; (iii) the degree of relevant evidence supporting the opinion; (iv) consistency of the opinion with the record as a whole; (v) whether the physician is a specialist; and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was not required to give controlling weight to any opinion by Dr. Malloy to the effect that the claimant was disabled or could not work, but he did have to evaluate for controlling weight any opinion as to the claimant's functional limitations. Instead, the ALJ dismissed Dr. Malloy's opinion as to the claimant's functional limitations on the

erroneous observation that Dr. Malloy's "treatment records do not support his pessimistic functional assessment" and the unsupported assumption that he was simply "parroting" the claimant's subjective complaints (Tr. 23). *See, e. g., Langley,* 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.'"), *quoting McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original]. But even if Dr. Malloy's opinions *were not* entitled to controlling weight, the ALJ should have determined the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. The ALJ clearly failed to do this.

The claimant also argues that the ALJ failed to properly account for her pain. In this regard, despite finding the claimant suffered from severe pain-inducing impairments, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing impairments

-8-

upon the claimant's RFC. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.3d at 1490-91, *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Because there was objective evidence that the claimant had a pain-producing impairment, *i. e.*, fibromyalgia, the ALJ was required to consider the claimant's pain and the extent to which they were disabling. And because the ALJ found that the claimant's fibromyalgia was a severe impairment at step two, *i. e.*, having more than a minimal effect on her basic work activities, it is "impossible to conclude at step four that her pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003); *see also Duncan*, 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five.").

    The ALJ apparently rejected the claimant's complaints of pain based solely on a lack of objective support in the medical record. But symptoms of fibromyalgia are "entirely subjective." *See, e. g.*, *Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's]

cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia."). The Court therefore finds that the ALJ failed to properly analyze the claimant's pain at step four.

The claimant contends that the ALJ's failure to properly evaluate the opinion of Dr. Malloy and allegations of pain contributed to a faulty determination of the claimant's credibility. An ALJ's credibility determination is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL

374186, at *4 (July 2, 1996). The ALJ's analysis of the claimant's credibility in this case fell below these standards.

The ALJ mentioned that he had considered the requirements of Social Security Ruling 96-7p and the credibility factors set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), but he failed to apply them to the evidence.[3] Although an ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), simply reciting the factors is clearly insufficient. *See Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4. The ALJ summarized the medical evidence (including the testimony of the claimant), but instead of providing a proper analysis, he negatively interpreted two factors to find that the claimant not credible: (i) the claimant's testimony that she had earned her GED but needed help with managing her own funds (which he interpreted as a claim that she could not add or subtract), (ii) the findings by Dr. Malloy that the ALJ determined were "basically normal" (Tr. 22-24). There are two problems with this analysis: (i) the ALJ misstated the claimant's testimony about "getting numbers mixed up" as an inability to add or subtract on three separate occasions (Tr. 19-24); and (ii) as noted above, his unsupported assumption that Dr. Malloy simply "parroted" claimant's own reports was improper. The Court finds that the ALJ misread the medical evidence taken as a whole and therefore failed to analyze the claimant's credibility properly.

---

[3] Factors to consider in assessing a claimant's credibility are: (i) daily activities; (ii) location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; (vii) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3.

Because the ALJ failed to properly analyze Dr. Malloy's opinion and claimant's credibility (including her allegations of pain), the Commissioner must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma